BURTON MANSFIELD, TRUSTEE *vs.* WILLIAM R. SHELTON ET AL.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A testator gave the residue of his estate to his wife "to be used and appropriated by her, so much as she may wish for her happiness, without any restrictions or limitations whatever ; and upon the decease of my wife and after the payment of all her debts and the settlement of her estate, I give whatever of property or estate of such residue and remainder shall remain undisposed of," to *C* in trust for the children of *S* during their lives. The will further provided for the disposition of the fee in case *S* should die childless, but not otherwise. *S* died

leaving two children. In a suit to determine the validity and construction of the will it was *held :*—

1. That the wife took a life estate only.
2. That the disposition made in the will of the property left at her decease, was valid, as was also the trust created for the benefit of the children of *S.*
3. That under the circumstances as they existed, the fee was not disposed of, and consequently the said property vested as intestate estate in the heirs at law of the testator.

[Argued February 6th—decided March 6th, 1896.]

SUIT to determine the validity and construction of the will of Charles Shelton, late of the city of New Haven, deceased; brought to the Superior Court in New Haven County and reserved by that court, *Shumway, J.*, for the consideration and advice of this court.

The case is sufficiently stated in the opinion.

*William L. Bennett*, for A. Louise Woolson, William R. Shelton, and the executor of the will of Caroline M. Shelton, deceased.

*J. Frederic Kernochan* of New York, and *Samuel H. Fisher*, for Grace Martin, William Buddington, Z. Grenell, Inez Grenell, and Julia Pierson.

FENN, J. This is a case reserved by the Superior Court for the advice of this court. The questions presented relate to the construction and legal effect of provisions contained in the last will and testament of Charles Shelton, who died about June 4th, 1888, seized and possessed of an estate consisting of real and personal property, of the value of about $33,000.

That portion of the will of Chares Shelton material to the present inquiry is as follows :—

" All the rest and residue of my estate, both real and personal and wherever situated, I give, devise and bequeath to my said wife, to be used and appropriated by her, as much as she may wish for her happiness, without any restrictions

or limitations whatsoever; and upon the decease of my said wife and after the payment of all her debts and the settlement of her estate I give, devise and bequeath whatever of property or estate of such residue and remainder shall remain undisposed of at the decease of my said wife to Edward A. Cornwall, of Cheshire, of said New Haven County, in trust, to keep and hold the same, or invest the same, as said trustee shall deem to the best advantage, for the use and benefit of the children of the present wife of my nephew Charles W. Shelton, and of the survivor or survivors of such children, so long as they shall live, or any one or more of them; and that such trustee pay and deliver to such surviving children, in equal portions to each, from time to time, and at least as often as once in each year, the net avails of the income of said estate, so given to him in trust, as aforesaid, upon the annual settlement of his trust account with the Court of Probate; provided nevertheless, that in the event of the decease of my said wife, my said sister, Grace A. Budington, shall, upon the finding of the judge of probate in which my estate shall be pending for settlement, be found to be in needy and in necessitous circumstances, then, upon such finding and decree of such Court of Probate, I give and bequeath to the said trustee one-third of such residue of said estate so given to my said wife, for the use of my sister during her life, and the remaining two-thirds of the same to be held for the use and benefit of the children of my said nephew's wife, the income of which one-third shall be paid to my said sister annually, so long as she shall live; and upon her decease the whole of said income is to be paid, as aforesaid, to said children and the survivor of them. But if my said nephew shall die without leaving issue surviving him by his present wife, then such part or portion of said residue or remainder of my estate as shall remain undisposed of at the decease of my wife I give, devise and bequeath to my brother, William R. Shelton, and my said sister, and to their heirs forever, to be equally divided between them, share and share alike; and in the event of the death of my brother before the decease of my wife the portion of said

residue so given to my said wife which would thus belong to him, if living, I give, devise and bequeath to his wife, Anna L. Shelton, and her heirs forever."

Soon after the death of the testator, his will was duly probated in the Court of Probate for the district of New Haven, and the widow, Caroline M. Shelton, who was named as executrix, duly qualified as such. In July, 1889, she returned her account with the estate, and the same was accepted by the Court of Probate. After the due settlement of the estate and the payment of the legacies bequeathed by his will, she possessed and enjoyed the residue thereof until her death, which occurred June 28th, 1894. Edward A. Cornwall, the trustee named in said will, having died before the ' decease of Charles Shelton, the said Caroline M. Shelton on the 14th day of February, 1893, was duly appointed by the Court of Probate for the district of New Haven, trustee under the said will in the place of the said Edward A. Cornwall, deceased, and duly qualified as such trustee. The plaintiff, who is the present trustee under the will of said Charles Shelton in the place of said Caroline M. Shelton, deceased, has received and is possessed of real and personal property of the value of about $23,000, being the rest and residue of the property of the said Charles Shelton, undisposed of by the said Caroline M. Shelton in her lifetime under the will of her husband, said Charles Shelton, deceased.

The first and only difficult question presented is stated thus in the complaint: " Whether under said will of Charles Shelton the rest and residue of his estate, devised and bequeathed to his wife, as therein set out, became her property and estate in fee, or whether she took therein an estate for life only; and whether or not the disposition attempted to be made of whatever property or estate of such residue and remainder as should remain undisposed of at the decease of said Caroline M. Shelton, and the settlement of her estate, is valid by way of executory devise."

The more recent cases in this State which merit consideration in the present examination, are *Sheldon* v. *Rose*, 41 Conn., 371; *Lewis* v. *Palmer*, 46 id., 454, 455; *Glover* v.

*Stillson,* 56 id., 316; *Peckham* v. *Lego,* 57 id., 553; *Hull* v. *Holloway,* 58 id., 210; *Methodist Church* v. *Harris,* 62 id., 93, and *Sill* v. *White,* ibid., 430. These decisions are in harmony, and consistent with each other, and they establish certain rules or principles as the settled law of this State, which may be stated thus :—

*First.* If the primary gift conveys and vests in the first taker an absolute interest in personal, or an absolute fee simple in real property, it exhausts the entire estate, so that there can be no valid remainder.

*Second.* A life estate expressly created will not be converted into a fee, absolute or qualified, or into any other form of estate greater than a life estate, merely by reason of there being coupled with it a power of disposition, however general or extensive.

*Third.* An express gift in fee will not be reduced to a life estate by mere implication from a subsequent gift over, but may be by subsequent language clearly indicating intent and equivalent to a positive provision.

*Fourth.* Except as restrained by the foregoing limitations —indeed in some instances apparently impinging upon them —the question as to whether the primary gift is in fee, so as to exhaust the entire estate, is in each case to be decided upon a careful examination of the entire will, aided by legitimate extrinsic evidence, to ascertain the actual intent of the testator; which intent, when so discovered and made obvious, is controlling.

In illustration of the scope, limitations and application of the foregoing rules, a reference to language used by this court in some of the cases cited will be appropriate. In *Sheldon* v. *Rose, supra,* the testator gave his wife, in case of her remarriage, "only one half of the property, . . . which shall go to her for her support during her natural life." The will contained no residuary clause, and there was no specific disposition of any possible remainder, after the death of the wife. This court held the wife had an estate for life only, and not in fee, and so the estate became intestate when the wife's interest terminated. In reaching this conclusion the

court, by CARPENTER, J., said: "It is not clear that the testator intended to give her an absolute estate, while the language used seems to indicate a contrary intention. . . . We have come to the conclusion that the testator did not intend to give an estate in fee." The opposite result in *Methodist Church* v. *Harris*, *supra*, is based on the same grounds. In that case the testator gave property to his wife, "and to her heirs forever," with a *proviso* that, "whatever of the same, if any, she may leave not used by her for her support and comfort, I give and bequeath." The court, by CARPENTER, J., said: "The intention to give a fee is clear; and we discover in the subsequent words no evidence of an intention to revoke the gift. It is a bald attempt to limit a fee upon a fee, which the law will not allow." In *Lewis* v. *Palmer*, *supra*, the language of the devise was: "I give to my sister *S* the use of all the rest of my real estate during her natural life, and for her to dispose of as she may think proper, right or just." This court by CARPENTER, J., said: "We find no case where a life estate created by express words is enlarged to a fee by the power of sale. There are cases where there is an apparent life estate with power of disposal, but without any disposition of the remainder, in which it is held that the devisee takes a fee. There are other cases where there is a devise of an estate generally, with an express power to sell, in which it is held that the devise over of the remainder is void for repugnancy. But we think none of the cases go so far as to disregard the obvious and acknowledged intention of the testator. All seem to regard that when discovered as conclusive. Courts differ widely as to what the intention is, and oftentimes different courts" (might he not have said the same court?) "will draw different conclusions from similar language, and sometimes even from language precisely identical. But usually there will be found something in the will, or something omitted, or something in the situation and circumstances of the estate and the parties interested, to account for these apparent differences; and most of them, it is believed, may in that way be reconciled." In *Glover* v. *Stillson*, *supra*, this court

by Carpenter, J., said: " We now come to the main ques-
tion—does the second clause give a life estate or a fee?
There are two methods of construing wills: one is to ascer-
tain the intention of the testator and give effect to that so
far as it is consistent with the policy of the law. Within
those limits all artificial rules of construction must yield to
the intent. The other is to apply legal rules and construe
the language used accordingly. In the latter case it cannot
be denied that the intention of the testator is often defeated.
This case affords an excellent illustration. We are asked to
say as matter of law that the power of sale enlarges an ex-
press life estate to a fee. If we do so what becomes of the
intention of the testator? His intention to give pecuniary
legacies to the parties named and the residue to the orphan
asylum, is just as certain and, we may add, just as provident,
as the intention to provide for his sisters ; and that intention,
by the construction contended for, is wholly defeated. The
power of sale may, in doubtful cases, aid in ascertaining
the intention; but to give it an artificial and technical force
and thereby defeat the manifest intention of the testator, is
wholly inadmissible." In *Peckham* v. *Lego, supra.* this court
by Loomis, J., quotes the above language from *Glover* v.
*Stillson,* and adds : " These utterances we think are in accord
with the decided preponderance of judicial authority in the
United States." Similar, and perhaps even stronger expres-
sions are used in *Hull* v. *Halloway,* and in *Sill* v. *White,*
*supra.*

The leading case of *Smith* v. *Bell,* 6 Pet. (U. S.), 68, opin-
ion by Chief Justice Marshall; *Brant* v. *Virginia Coal
& Iron Co. et al.,* 93 U. S., 326, 334; and *Giles* v. *Little,* 104
U. S., 291, 296, have been frequently cited by this court, and
are among the almost numberless decisions in accord with
the foregoing doctrines. In the light, and with the assist-
ance of these established principles, let us approach the ques-
tion presented in this case.

In the language of the clause before us, there is no ex-
press gift of a life estate, as in many of the cases cited, or
of a fee, as in *Methodist Church* v. *Harris, supra.* Such

arbitrary and technical rules therefore, as have been in some jurisdictions, indeed in very many cases, applied to such expressions, are not relevant here. The testator at the outset gave his residuary estate to his wife ; whether in fee or for life, he did not say. True, had he stopped there and the will contained nothing further, the effect would have been to give his wife a fee in the realty, and an absolute estate in the personal property. But this would have been because his intention to do this would be clearly manifest. If there was anything else in the will indicative of the testator's intent concerning the matter, it would require consideration and be given full weight. The testator did not stop here. He continued, " to be used and appropriated by her." This also would indicate an intention, if this were all, that the gift be absolute ; but he added " as much as she may wish for her happiness, without any restrictions or limitations whatsoever." This essentially modifies the preceding words and, taking the entire language down to this point, contained in and forming a part only of a single sentence, shows the purpose of the testator was that all of his residuary estate should go into the hands of his wife, not as an absolute estate—not " to her and her heirs forever," as was the case, and expressly stated in *Methodist Church* v. *Harris*, *supra*—but for life, the limit beyond which her earthly happiness could not extend, with full power of disposition, for the promotion of such happiness, of *as much* of the estate as she might wish for that purpose ; which it is evident the testator believed would not be all, as, in fact, it was not. Had the testator stopped here, the case would we think be stronger in support of the claim that only a life estate was intended to be given to his wife, though coupled with a power of disposition, than in *Sheldon* v. *Rose, supra.* Certainly it could not have been said, as in *Methodist Church* v. *Harris, supra,* that the intention to give a fee was clear.

But we have not even yet considered the most significant part of the testator's language. He continues : " And upon the decease of my said wife and after the payment of all her debts and the settlement of her estate I give, devise and bequeath whatever of property or estate of such residue and

remainder shall remain undisposed of at the decease of my said wife, to Edward A. Cornwall, of Cheshire, of said New Haven County, in trust," adding somewhat lengthy and elaborate trust provisions for the benefit of those unprovided for in any other portion of the will, who were apparently natural objects of the testator's bounty,—provisions which can have no operation except in case that some of the residuary estate of the testator remained undisposed of under the previous part of the residuary clause, and by the wife acting within the scope of its limitations.

Here then, following the gift to the wife, and introductory to the trust provision, in the residuary clause was language also very unlike the language of the will construed in *Methodist Church* v. *Harris, supra.* Here was no *proviso* concerning whatever property, if any, might be left. No doubt seems to have existed in the mind of the testator concerning this. There were no children to be provided for. The wife was to have full provision for herself, but limited to herself. Even her debts, if any, were to be confined to such as she herself might contract for things necessary or desired for her personal happiness, and, as ascertained upon the settlement of her estate, were to be paid; but then, whatever remained of the residuary estate of the testator was to go as his, not her, gift, devise and bequest, and to those who were his, and not necessarily her, natural objects of bounty. Our conclusion is that only a life estate vested by virtue of the will in the widow of the testator, and that the subsequent provisions of the residuary clause are valid and operative.

The recent case of *Chase* v. *Ladd*, 153 Mass., 126, involved the construction of language so similar to that, but stronger in support of the claim that it created an absolute estate than that before us, with the same result which we have reached, that we deem a reference fitting, as indicating the views of a sister jurisdiction in which such questions, as shown by a long line of decisions, have received unusual examination. In this case the testator gave and devised all his property to his wife, " to her own use and behoof forever," but provided that if any of such property should not be expended for her support and maintenance during her lifetime,

Mansfield, Trustee, *v.* Shelton et al.

it should be disposed of in the manner designated in the will. It was held that the language used did not vest the property in the wife absolutely, but merely conferred upon her a right to use it for her support, and if necessary for that purpose, to dispose of it during her life, leaving whatever she had not so disposed of to vest after her death in other persons as provided in the will. The same result was reached in *Kent* v. *Morrison*, 153 Mass., 137, where the language was: "I give, devise, and bequeath to my beloved wife, Mehitable Kent, all the estate, both real and personal, that I die seized and possessed of, giving her full power to sell and convey the same by deed (part or all of it), and the proceeds thereof are to be used for her comfort, and otherwise as she may think proper."

The other questions presented in the case may be directly answered. They do not require discussion. As bearing upon them, however, it should be stated that it appears that Grace A. Budington, the sister of said Charles Shelton, named in his said will, died before the decease of the said Caroline M. Shelton. Charles W. Shelton, named in said will, has died, leaving two children parties to this suit. The mother of said children was, at the time said will was made, and at the time of the death of said Charles Shelton, the wife of said Charles W. Shelton.

The Superior Court is advised:—

*First.* That the wife of Charles Shelton took under his will a life estate only, not an absolute property or fee simple; and that the disposition made in such will of whatever property or estate of the residue and remainder which remained undisposed of at the decease of Caroline M. Shelton and the settlement of her estate, is valid.

*Second.* The trust created by said will for the benefit of the children of Charles W. Shelton is valid.

*Third.* The fee of said property, in the contingency which has happened, was not disposed of, and it vested as intestate estate in the heirs at law of said Charles Shelton.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.