JAMES C. BROWN, ADMINISTRATOR (ESTATE OF WILLIAM H. PECKMAN), *vs.* ELLIS E. POTTER ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 2d, 1931—decided March 8th, 1932.

*John V. O'Brien,* for the plaintiff.

*Michael J. Quinn,* with whom was Philip Troup, for the defendant Rogers, administrator of the estate of William N. Potter.

*George M. Peck,* with whom, on the brief, were *Frank R. Goldman* and *Lyman H. Steele,* for the defendants Charles P. Peckman, Eva P. Moore, Ellen A. Lockhart and Grace M. Lockhart.

HINMAN, J. This action involves the construction of the third and fourth paragraphs of the will, dated February 13th, 1897, of William H. Peckman, of New Haven, who died August 31st, 1905. The paragraphs in question are quoted in a footnote. The widow of the decedent, Emily E. Peckman, enjoyed the use and income of the estate until her death on July 10th,

"Third: All the rest, residue and remainder of my estate, real, personal or mixed of every name and nature I give, devise and bequeath to my beloved wife, Emily E. Peckman, the same to be used and enjoyed by her as her own proper estate, and with full

1921, and did not dispose of certain real estate belonging to the estate of her husband, which has since been sold by the plaintiff administrator, *c. t. a. d. b. n.* on the estate of William H. Peckman, and he is holding the proceeds thereof. After the death of William H. Peckman, his widow married Henry J. Griswold, who survived her.

One nephew and three nieces of William H. Peckman survived him at his death and all are still living; three nephews and one niece of his widow survived him and are still living, with the exception of one nephew, William N. Potter, who died May 7th, 1913, after the death of William H. Peckman and before the death of Emily E. Griswold.

The questions upon which advice is desired are: (1) Did Emily E. Griswold, the widow of William H. Peckman, receive an absolute estate in fee simple under paragraph three of the will? (2) Did the nephew and nieces of William H. Peckman and the nephews and niece of Emily E. Griswold who survived William H. Peckman at the date of his death, take a vested interest on that date in Peckman's estate, subject to being divested by a disposition of the property by the widow in accordance with the provisions of paragraph three of his will; or (3) did only the nephews and nieces who survived Emily E. Griswold at her death on July 10th, 1921, take a vested interest in the estate, upon her death?

Reading the two paragraphs of the will together, it

---

power to use, enjoy, control and dispose of the same in any manner except by will.

"Fourth: Upon the decease of my said wife, I give, devise and bequeath all of my said estate that may remain at her death to my surviving nephews and nieces, and the surviving nephews and nieces of my said wife, to be equally divided between them, share and share alike, the same to them, and to their heirs and assigns forever."

is clear that the intention of the testator was that his widow should not take an estate in fee simple in the residue but only a life estate, although with power not only to use and enjoy the income but also to convert to herself the corpus during her life if she so elected, but without the right to dispose of by will or transmit by inheritance any of the estate remaining at her decease. The restraint in the third paragraph upon testamentary disposition by her, and the gift over to nephews and nieces in the fourth, conclusively manifest such an intention. A life estate will not be converted into a fee or any other form of estate greater than a life estate merely by reason of there being coupled with it a power of disposition, however general or extensive. *Mansfield* v. *Shelton,* 67 Conn. 390, 394, 35 Atl. 271. "An estate once given by will in absolute terms may . . . be cut down to a lesser one by subsequent provisions of the instrument clearly showing that it was the testator's intention to give such lesser estate." *Meriden Trust & Safe Deposit Co.* v. *Squire,* 92 Conn. 440, 446, 103 Atl. 269; *Scanlin* v. *Peterson,* 105 Conn. 308, 313, 135 Atl. 394.

The only point presented by the second and third questions which is of practical importance upon the facts of the case is whether the gift of the remainder, after the life estate of the widow, so vested as to entitle the estate of the nephew, William N. Potter, who survived the testator but predeceased the life tenant, to share therein. This would occur only if his interest vested at the death of the testator indefeasibly except through disposition of all the property by the life tenant, in her lifetime, under the powers and privileges conferred upon her by the will.

We interpret the testamentary provisions as signifying an intention that the remainder should pass only to the nephews and nieces surviving at the termination

of the life estate. The amount of property passing by the gift over could not be ascertained until the death of the widow, as it would consist only of so much as she failed to convert to herself in her lifetime. The language of the will convinces us that the remainder to which paragraph fourth relates is that existing at the death of the life tenant and that the testator's purpose was that such remainder should pass only to the nephews and nieces surviving at that time.

While precedents are usually inconclusive, since the same or substantially similar phraseology of expression seldom occurs in different wills, cases of construction tending to confirm the foregoing view are not wanting. *Denny* v. *Kettel,* 135 Mass. 138, concerned a will by which the testator left a fund in trust, first, to pay the income to his wife for her life; second, after her death to make certain specific payments from the fund; third, to pay the net income of the residue to two persons and the survivor of them; fourth, after the decease of the survivor to pay a certain sum to Harvard University; and fifth, to pay over "all the residue of said trust fund, in equal portions, to my surviving nephews and nieces." One of the nephews died after the testator but before the time for final distribution, and the question there, as here, was whether the representatives of the deceased nephew were entitled to a share. It was there stated (p. 139): "The question to what period survivorship is to relate must depend rather upon the apparent intention of the testator, in each case, than upon any rigid rule. Here were two separate life estates, preceding the time for distribution. The various legacies to persons from the principal of the fund were to be paid only in case the legatees named should survive the testator's wife. The testator had in mind, in these

clauses, a later period of survivorship than his own death. All the residue of said trust fund, which was finally to be divided, was what should be left after the end of both of the life estates, and after the payment of all of the specific sums to the different persons and societies named. This residue was not ascertainable till the time came for its distribution. The word 'surviving' more naturally relates to that time when the residue was to be ascertained and distributed. The persons who are to take are not mentioned by name; but the language used was equivalent to saying, 'after the decease of the survivor of the last two life tenants, and the payment to Harvard University, then to pay over the residue to my surviving nephews and nieces,' or 'to pay over the residue to my then surviving nephews and nieces.' This gives effect to the word 'surviving.' This construction seems best to carry out the apparent intention of the testator, and is also in accord with the course of the more recent decisions, under wills somewhat similar." In *Coveny* v. *McLaughlin*, 148 Mass. 576, 578, 20 N. E. 165, 2 L. R. A. 448, the testator devised real estate to his wife for life "but on her decease I give and devise the same to my surviving children, to be divided equally between them." Five children survived the testator but only two survived the wife. The question presented was whether the word "surviving" related to the time of the testator's death or to that of his wife. "According to the natural use of language, it has reference to the latter event. It is placed in close connection with her decease. No reference is made to the time of his own death in any part of the will. The word 'surviving' would be unnecessary and meaningless if he meant to give the remainder of the estate to all of his children. The children surviving on her decease must be taken to be the devisees intended." Further,

we perceive no controlling distinction between the terms of the provision we are considering and that in *Belcher* v. *Phelps*, 109 Conn. 7, 16, 144 Atl. 659: "On the decease of . . . Harrison F. Phelps I devise and bequeath to his children, in equal shares, if he shall leave any surviving him, the other one-half of the residue of my estate" with an alternative gift "if he shall leave no surviving children or lineal descendants of them." Of this we said (p. 17): "Seldom will be found a plainer example of the annexation of the future event to the substance of the gift than in the provision. . . . The gift takes effect upon his decease, that is, upon the future event upon whose coming the existence of the gift is made to depend." Citing *Austin* v. *Bristol*, 40 Conn. 120.

To the first question reserved our answer is "no"; as to the remaining questions, it is sufficient to the purposes of this case to add to what has been said only that the necessary conclusion therefrom is that only the nephews and nieces who were living at the decease of the life tenant, Emily E. Griswold, are entitled to share in the distribution of the remainder, and the representative of the deceased nephew, William N. Potter, is not so entitled.

In this opinion the other judges concurred.